## DANIEL R. JUNE VS. THOMAS J. MYERS.

1. When a bill is filed, and a cause is at issue, and the nature of the case requires a statement of account by a master, and the master in his report simply recapitulates immaterial portions of the testimony, without stating an account, no decree can be based upon such report.

2. Where the appellate court cannot determine from the report of a master or from the evidence in the case the basis upon which the decree was made, the decree will be reversed.

Appeal from decree of the Circuit Court sitting for Alachua county.

A statement of the case is contained in the opinion.

*S. Spencer*, for Appellant.

*Banks* and *Banks*, for Appellee.

RANDALL, C. J., delivered the opinion of the court :

Thomas J. Myers, complainant, (respondent,) filed his bill of complaint against the appellant in the Circuit Court of Alachua county, and alleges, that in February or March, 1861, he left his home in said county, and left this State, leaving in possession of the appellant three negro slaves, the property of the complainant, with the express understanding and agreement that they were to work as laborers upon the plantation of the appellant, or be employed in clearing lands, and in such other ways as the appellant might direct, the complainant to receive for their services an equal share per hand of the entire gross crop grown upon the plantation of the appellant, the appellant paying all expenses, &c.; and that said slaves labored continuously and without intermission under the direction of the appellant, from February or March, 1861, to the first of May, 1865, and that ap-

pellant has failed and refused to account for said services as per agreement between them.

Complainant further alleges that he likewise left in the possession and custody of appellant at the same time, a number of notes, amounting in value to two hundred and fifty dollars, or some other large amount, which he has refused to account for, either by returning the notes or paying over the money, if any, realized therefrom. And that at the same time he left on appellant's plantation one bay stallion horse, worth four hundred dollars, and he is informed and believes that appellant sold said horse without complainant's permission, and has failed and refused to account therefor. And that, at the same time, he left in the custody and possession of appellant a quantity of household furniture, clothing, baggage, &c., of the value of one hundred dollars, and likewise a number of medical and miscellaneous books, of the value of one hundred dollars, for which appellant has failed and refused to account.

That in February or March, 1861, he gave to the appellant a power of attorney authorizing him to rent or sell the plantation of complainant in said county, and that appellant rented said plantation during the years 1861 to 1865, to different individuals, for large amounts of money or for a portion of the crops, and that he has absolutely failed and refused to account for the same.

That in January, 1866, he endeavored upon sundry occasions to have an amicable settlement of all matters at issue between the parties, and that appellant has absolutely failed and refused so to do; and complainant prays that appellant may be required to account to him for the property left in his possession and custody, or to pay over to complainant the sum of eight thousand two hundred dollars, with interest and costs, and for such other and further relief as the circumstances of the case may require &c.,

The appellant answers, denying and qualifying the allegations in relation to the leaving of the slaves in his custody, and

denying that there was any agreement whatever in relation to them; and says the slaves were left in his possession, subject to the orders of the complainant, and avers that he has fully settled with complainant, and that upon a fair and equitable settlement, complainant owes him five hundred dollars; denies that complainant left with him promissory notes as alleged, except one note for one hundred dollars, which was paid to another person by direction of complainant; that appellant rented the plantation of complainant one year for one hundred dollars, and a part of it another year for fifty dollars, which amounts were paid to him, and no more; that the horse was left on his plantation, but not in his custody, and that the horse was sold by a third person, but appellant had nothing to do with the transaction; that complainant left on his premises some furniture, a quantity of old medicines, and some books, with which appellant had nothing to do except to give them house-room. Annexed to the answer is an account of sundry expenditures, marked Exhibit A, referred to in his answer.

No replication appears to have been filed by the complainant, but the defendant has waived this omission by proceeding to the trial as though the case was at issue.

Several witnesses seem to have been examined for each party upon commissions issued, and before a Master in Chancery; but none of the testimony is signed by the witnesses.

The decree recites that the cause "having been referred to a special· master to take testimony and report thereon, and the same having been done and returned, and after an investigation and review of the whole case, and it appearing thereon to the satisfaction of the court" that the defendant should account to the complainant for the sum of twelve hundred and five dollars and ninety-two cents, with costs of suit; "that the master performed services of much labor in said suit, and his services are worth $250;" therefore it is ordered, that defendant pay those sums, &c.

From this decree the defendant appealed to this court.

Notwithstanding that the defendant, appellant, did not demur to the complainant's bill, we cannot avoid applying a well-established rule in declaring that the claims made in the bill for the value of certain notes, for a horse, for a quantity of furniture, clothing and baggage, and for a lot of books, left in appellant's possession, and for which it is alleged he refuses to account, cannot be entertained in a court of equity, under the circumstances mentioned in the bill, in this case. Yet, so far as we are able to understand the record, these several matters, the subjects of an ordinary action on the case or trover according to the statement made, are sought to be made the subjects of equity jurisdiction, and are in part the basis of the decree of the chancellor.

We have examined the record in vain, in the attempt to ascertain from a master's report the foundation of the decree. The paper appearing in this record, which, in the absence of any thing else wearing familiar features, is presumed to be a master's report, is simply a statement of very immaterial portions of testimony taken and inspected by him, and gives no data upon which, to our comprehension, a decree can be founded in favor of the complainant. And yet for the services and "much labor" performed by the special master, resulting in two foolscap pages of "report," which states nothing required of him by the statutes or the rules, but violates both, the chancellor decreed the sum of two hundred and fifty dollars as his compensation.

The statutes, Thompson's Dig., 463 to 465, direct masters in chancery very plainly how to proceed in the performance of their duties. This statute is mainly a reiteration of the rules of the court. The rules require also (Rule 79) that all parties accounting before a master shall bring in their respective accounts in the form of debtor and creditor. Neither the parties nor the master seem to have been aware of these provisions of the statute or the rules. Some other action of the chancellor than a decree of compensation to the master for his action in this case, should have been taken.

314 · SUPREME COURT.

Daniel R. June vs. Thomas J. Myers—Opinion of Court.

Turning in despair from the decree and the report of the master, we have attempted to ascertain from the depositions on file, whether the decree should not be sustained at least in part. But we have been unable to glean the necessary intelligence from that source.

The Supreme Court, in Robertson vs. Baker, and Macrae, XI. Fla., 230, remarks: " In such a state of case, a court may well hesitate before passing definitely upon the rights of parties. The chancellor below, however, did arrive at a conclusion on this point and decreed accordingly ; but as we are ignorant of the basis of the calculation or the process through which that conclusion was reached, we deem it to be most consonant with justice and equity that the decree be set aside and the accounts be recommitted to a competent master, to be properly adjusted. * * It is hazarding too much to make a decree in the premises without an intelligible report from a competent master." Such a report may be possible in this case, upon the testimony already taken, but if not, the chancellor may take such action as may seem to be necessary, in order to a proper disposition of the case.

We commend to the careful attention of the counsel and the clerks of courts, the suggestions of Chief-Justice DuPont, in the case of Simpson vs. Barnard *et al.*, V. Fla., p. 532–3.

For the reasons here stated the decree must be set aside, and the cause remanded, with directions to the court to take such further proceedings as may be agreeable to the rules and practice of the court, and in accordance with this opinion.